IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| SMARTPHONE TECHNOLOGIES, LLC, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| RESEARCH IN MOTION CORP., et al., | ) ) | Civil Action No.<br>6:10-cv-0074-LED-JDL |
| Defendants. | ) ) | JURY TRIAL DEMANDED |
| v. | ) ) | |
| HTC CORPORATION, et al., | ) ) | Civil Action No.<br>6:10-cv-580-LED-JDL |
| Defendants. | ) ) ) | JURY TRIAL DEMANDED |

**DEFENDANTS' OBJECTIONS TO AND MOTION FOR RECONSIDERATION OF
<u>MEMORANDUM OPINION AND ORDER RE CLAIM CONSTRUCTION</u>**

I.  **INTRODUCTION**

Pursuant to Fed. R. Civ. P. 72(a) and Local Rule CV-72(b), Defendants respectfully object to and move for reconsideration of the Magistrate Judge's August 2, 2012 claim construction opinion and order ("Order") (Doc. No. 252), construing U.S. Patent Nos. 7,076,275 ("the '275 patent"); 7,506,064 ("the '064 patent"); 7,533,342 ("the '342 patent"); 7,693,949 ("the '949 patent"); RE40,459 ("the '459 patent"); and 6,950,645 ("the '645 patent").

II.  **THE '459 PATENT**

Defendants object to the construction of three claim terms in claim 1 of the '459 patent.

A.   "the form including one or more fields"

Defendants respectfully request reconsideration of the Magistrate Judge's construction. The claim language requires a single form that is both rendered, combined with input, and communicated.[1] In contrast, a communication with a server dependent form does not have user input combined with the form before the communication is signaled to the network from the device and therefore cannot fall within the language of Claim 1.[2] The order improperly broadens the scope of the claim by allowing the single "form" to change depending on whether it is being communicated or rendered, which is improper as a matter of law.[3]

In addition, Defendants respectfully submit that the holding that server dependent forms are not excluded from this claim is incorrect. Specifically, as discussed in Defendants' Response brief, the applicant stated "[t]he handheld computer includes a processor that can generate a form.

---

[1] *See* Order at 10.
[2] *See* Feb. 16, 2012, Defendants' Responsive Claim Construction Brief at 3-4 (Doc. No. 184) (hereinafter, "Defs.' Resp."); *see also* Mar. 6, 2012, Markman Hr. Tr. at 20:16-23:2 (hereinafter "Markman Hr. Tr.").
[3] Additionally, the Court states that "server dependent forms 'do not have associated name or value attributes.'" Defendants' respectfully request reconsideration of Defendants' proposed construction to include "at least one field name and value attribute" upon reconsideration of the Court's holding that Claim 1 includes server dependent forms. *See* Order at 9; *see also* Markman Hearing Tr. at 24:6-22.

The form can be combined with user input (i.e., filled in) and signaled to a network site. . . ."[4]

This process cannot be performed by a server dependent form.[5] Moreover, as discussed in Defendants' briefing, the applicant's "fail[ure] to claim in the original patent all the embodiments that could have been claimed" led to the reissue.[6] In addition, because the claimed form must include fields and the wireless communication must comprise the form, the communication must comprise fields, but the specification describes that when a server-dependent form is communicated, only an index of fields is sent, not the fields themselves.[7]

      **B.**    *"access the set of data from the memory to render a form for the selected network site"*

Defendants respectfully request reconsideration of this term. Although the "Court agrees that forms are rendered using data in memory," the Magistrate Judge erred by not construing the claim as "displaying a form for a specific website generated *entirely* from the set of data stored in the memory."[8] The Magistrate Judge's construction improperly broadens the claim beyond what is supported in the specification and prosecution history. As the Applicant stated, "[t]he information needed for generating the form *is stored on the handheld computer.*"[9] The claim language itself says "*the* set of data."[10] Defendants' construction clarifies that the data comes exclusively from memory and not from other locations, as Plaintiff alleges.[11] Defendants' construction is consistent with the claim language as well as the Applicant's own statements.

In addition, the decision to not construe the term "the selected network site" as "a specific website" does not provide the jury with needed clarification as to the scope of this term. The

---

[4] *See* Defs.' Resp. at 4; *see also* Ex. 2 at 9 of Defs.' Resp.; Markman Hr. Tr. at 20:16-23:2.
[5] *See* Markman Hr. Tr. at 20:16-23:2.
[6] *See* Markman Hr. Tr. at 23:3-24:5.
[7] Defs.' Resp. at 6.
[8] *See* Order at 12.
[9] *See* Defs.' Resp. at 1-2; *see also* Markman Hr. Tr. at 29:1-32:24.
[10] *See* Order at 12 (emphasis added); *see also* '459 patent, Claim 1.
[11] *See, e.g.,* Markman Hr. Tr. at 29:1-12.

language of the specification cited in support of the order's non-construction is nothing more than boilerplate language that deserves no weight.[12] Instead, the specification's language that "Fig. 1 shows the Internet 190 as the source of data and the source of data will be referred to as the Internet 190 throughout this application," is relevant and fully supports Defendants' proposed construction.[13] For these reasons, Defendants respectfully request reconsideration.[14]

    **C.**    *"the wireless communication comprising the form with the user-input being associated with the one or more fields"*

Defendants request reconsideration because the Magistrate Judge's decision improperly reads a limitation out of Claim 1. Claim 1 states "the wireless communication comprising the form."[15] However, the order finds that "the wireless communication *does not* comprise the rendered form..."[16] This is erroneous. The wireless communication must comprise "the form."

In addition, the wireless communication must comprise a form that is rendered and that contains fields. Claim 1 first describes "the form" as rendered and containing fields: "access the set of data from the memory to render a form …, the form including one or more fields."[17] This language is the antecedent basis for "the wireless communication comprising *the* form." Because the wireless communication comprises "the form," it must comprise a form that is rendered and that contains fields.[18] The Magistrate Judge's decision is erroneous because it reads this limitation out of the claim. It says, "the wireless communication *does not* comprise the rendered form, but rather the part of the form with user-inputted information."[19] Nothing in the

---

[12] *See* Order at 12-13; *see also ICHL, LLC v. NEC Corp. of Am.*, Case Nos. 5:08cv65, 175, and 177, 2010 U.S. Dist. LEXIS 38942, *51-52 (E.D. Tex., Apr. 20, 2010).
[13] *See* '459 patent at 16:24-26.
[14] *See* Defs.' Resp. at 2-3.
[15] *See* '459 patent at Claim 1.
[16] Order at 14.
[17] *See* '459 patent at 151:25.
[18] '459 patent, claim 1, *see also*, Order at 10.
[19] Order at 14.

3

claims states the wireless communication can comprise less than, or part of, "the form" that is rendered and that contains fields. In addition, the specification and claim language support transmission of a rendered form that includes fields within the form.[20]

### III. THE '275 PATENT

Defendants object to the construction of four claim terms from claim 1 of the '275 patent.

#### A. *"always active"*

The Magistrate Judge's construction that "always active" means "active when said telephony functionality is enabled" is unsupported by the claim and the specification. Contrary to the Order, Defendants do not argue that "the background task is constantly active, even when the telephony functionality is disabled."[21] And, Defendants' construction does not "contemplate that the telephony functionality may be disabled,"[22] rather, it clarifies what "active" means. Moreover, the patent does not disclose any mode in which the telephony functionality is disabled. The Magistrate Judge improperly redrafted the claim, broadening it to allow for such a mode. The claimed background task must always be active, i.e., it must always be monitoring and capable of performing the remaining functions described in the claim: detect, notify the operating system, and notify a user.[23]

#### B. *"a background task executed by said processor"*

The Magistrate Judge's construction of "a background task executed by said processor" is inconsistent with the claim language, which calls for two background tasks: "a background task executed by said processor" and "a background task of said operating system of said device." The construction reads out of the claim the language that the background task executed by the

---

[20] *See, e.g.,* Markman Hr. Tr. at 21:9-23:2.
[21] Order at 20.
[22] Order at 21
[23] *See* Defs.' Resp. at 14-15; Markman Hr. Tr. at 76:4 - 79:24 and 88:19-90:14.

4

processor must notify the operating system of an incoming call. If the background task executed by the processor is "of the operating system," this term would be superfluous.[24]

Moreover, the Magistrate Judge's construction improperly rewrites the claim language to rectify the claim's inherent indefiniteness. The order states that "despite the language in the claim, the disclosure does not describe two separate background tasks." Instead of declaring the claim invalid as indefinite or not properly enabled, the Magistrate Judge construes the language to re-write the claim contrary to its plain and ordinary meaning.[25]

    **C.**    *"irrespective of the user's activity on said device without terminating said application"*

The Magistrate Judge did not credit statements made by the applicant during prosecution that support Defendants' proposed construction.[26] The Magistrate Judge reasoned there was no prosecution disclaimer because the applicant discussed notification only without "disrupting" and without "terminating" the application in the same August 2003 response to overcome a rejection based on Yang.[27] But, the applicant also used the phrase "without interruption" in a July 2004 response to overcome the Casellini reference.[28] The Order ignores this response, which further limited the scope of the claim to notifying a user of incoming calls "without interrupting" the application in use.[29]

    **D.**    *"said background task interfacing directly with the telephony functionality of said device"*

---

[24] *See Digital-Vending Services International, LLC v. Univ. of Phoenix, Inc.,* --- F.3d ---, 2012 WL 718316, at *4 (Fed. Cir. Mar. 7, 2012) ("[C]laims are interpreted with an eye toward giving effect to all terms in the claim." (internal citations omitted).
[25] *See* Defs. Resp. at 13-12; Markman Hr. Tr. at 40:1-51:16; Feb. 16, 2012, Defs.' Mot. Summ. J. of Invalidity for Indefiniteness, at 3-7 (Doc. No. 183).
[26] *See* Defs.' Resp. at 15-16; *see also* Markman Hr. Tr. at 80:15-83:20 and 88:19-90:14.
[27] Order at 22
[28] Order at 22.
[29] *See* Defs.' Resp. at 15-16.

5

Defendants' proposed construction is fully supported by the specification and would provide the jury a clear understanding of this phrase. As discussed in Defendants' briefing, the sole description in the specification of how the background task interfaces with the telephony functionality is through a serial port.[30] While the Magistrate Judge used Fig. 4a to resolve the dispute, he failed to address Fig. 4b, which clarifies the communication is through a port.[31]

## IV. THE '645 PATENT

Defendants object to the construction of four claim terms of the '645 patent as set forth in the Magistrate Judge's Order and to the conclusion that the '645 patent is not limited to Bluetooth. The Magistrate Judge's citation to the specification is inapposite. The language that "the present invention may be utilized with devices and systems coupled using technologies and/or protocols different from Bluetooth," is nothing more than boilerplate language and is not supported by the specification or the claims.[32] The only disclosure of this invention is in a Bluetooth environment, the Bluetooth specification is incorporated by reference, and the claims have been limited by using Bluetooth specific language. In contexts similar to this, the Federal Circuit has refused to apply the doctrine of claim differentiation.[33] The Magistrate Judge's application of claim differentiation is thus improper and requires the Court's reconsideration.[34]

### A. *"discoverable mode"*[35]

---

[30] *See* Defs.' Resp. at 17; *see also* Fig. 3 & 4b; the '275 at 5:38-40.
[31] *See* Defs.' Resp. at 16-17.
[32] *See* Order at 27; *see also ICHL, LLC v. NEC Corp. of Am.*, Case Nos. 5:08cv65, 175, and 177, 2010 U.S. Dist. LEXIS 38942, *51-52 (E.D. Tex., Apr. 20, 2010).
[33] *See, e.g., Wang Labs., Inc., v. America Online, Inc.,* 197 Fed. 3d 1377 (Fed. Cir. 1999) (refusing to broaden the claims by applying the doctrine of claim differentiation where the specification consistently referred to a certain protocol); *see also LG Elects., Inc. v. Bizcom Elects., Inc.,* 453 F.3d 1364 (Fed. Cir. 2006).
[34] *See* Defs.' Resp. at 6-7; *see also* Markman Hr. Tr. at 105:19-123:16.
[35] This term is located in claims 18 and 19 of the '645 patent.

Although Defendants agree with the Magistrate Judge's construction that the responder device "scans for, and responds to," Defendants disagree with the Magistrate Judge's omission of "all" broadcast (inquiry) messages.[36] The specification supports that the responder device must respond to "*all*" received broadcast wireless signals. This is a dispute between the parties that does not appear to be addressed in the Order.[37] Defendants respectfully request reconsideration of the construed claim term to include "scanning for and responding to *all*."

**B.** *"standby mode"*[38]

The Magistrate Judge erred in deciding to not construe the term "standby mode." The specification, as discussed in Defendants' briefing, repeatedly refers to "standby mode" as "powered off."[39] Moreover, as disclosed in the specification, the transceiver is controlled separately from the rest of the responder device, even though it is part of the device.[40] The specification states, "In accordance with the present invention, Bluetooth-enabled device 390 may be powered down (turned off) while transceiver 308 continues to function, for example, in the standby mode."[41] Thus, in standby mode, the responder device is powered down while its transceiver continues to function. Although the language says "for example," standby mode is an example of when this configuration happens. In standby mode, the responder device is always powered down while its transceiver continues to function. In this state, the responder device, including its transponder, is connectable because the claim requires the device to always be connectable, and in this state, the responder device, including its transponder, is also non-discoverable because the claim states that the device is non-discoverable when it is in sleep mode.

---

[36] Defendants herein incorporate their objections and request for reconsideration regarding the Magistrate Judge's conclusion that "the '645 patent is not limited to Bluetooth embodiment" as discussed above.
[37] *See* Defs.' Resp. at 7; *see also* Order at 30.
[38] This term is located in claim 18 of the '645 patent.
[39] *See* Defs.' Resp. at 10-11.
[40] *See* '645 patent at Fig. 3.
[41] *See* '645 patent at Fig. 3.

Thus, the proposed construction that the responder is powered off while its transceiver remains connectable and not discoverable is consistent with the specification and claim language and provides the jury with needed clarification of the term at issue.[42]

### C. *"non-discoverable mode"*[43]

Defendants agree that in "non-discoverable mode" "the responder device does not scan for, and does not respond to." Defendants respectfully disagree, however, with the exclusion of "a Bluetooth" mode, for the reasons discussed above.[44] Should the Court grant Defendants' request for reconsideration regarding Bluetooth, Defendants request the Court reconsider the construction of "broadcast wireless signals from initiator devices" and construe that term to be consistent with Bluetooth, as "inquiry messages," as discussed in Defendants' briefing.[45]

### D. *"connectable mode"*[46]

Defendants agree that in "connectable mode" means "the responder device scans for, and responds to." Defendants respectfully disagree, however, with the exclusion of "a Bluetooth" mode, for the reasons discussed above.[47] Moreover, Defendants request reconsideration of the inclusion of "directed wireless signals from initiator devices," as opposed to the use of "page messages."[48] As discussed in Defendants' briefing and during oral argument, a connectable mode is understood to be a Bluetooth mode where the responder device scans for and responds to

---

[42] *See* Defs.' Resp. at 10-11; *see also* Markman Hr. Tr. at 119:16-122:10.
[43] This term is located in claim 18 of the '645 patent.
[44] Defendants herein incorporate their objections and request for reconsideration regarding the Magistrate Judge's conclusion that "the '645 patent is not limited to Bluetooth embodiment" as discussed above.
[45] *See* Defs.' Resp. at 9; *see also* Markman Hr. Tr. at 105:19-123:16.
[46] This term is located in claim 18 of the '645 patent.
[47] Defendants herein incorporate their objections and request for reconsideration regarding the Magistrate Judge's conclusion that "the '645 patent is not limited to Bluetooth embodiment" as discussed above.
[48] *See* Defs.' Resp. at 9.

"page messages." The adoption of Plaintiff's proposed language "directed wireless signals from initiator devices" is ambiguous and is inconsistent with the specification.[49]

## V. THE '949 PATENT

Defendants object to the construction of two claim terms from Claim 1 of the '949 patent as set forth in the Magistrate Judge's Order.

### A. *"the application program shielded from details of the transport mechanism"*[50]

Defendants respectfully request reconsideration of the term "the application program shielded from details of the transport mechanism" because the Magistrate Judge's construction is inconsistent with the claim language. Defendants request that the Court adopt their proposed construction, which is consistent with the claim language and specification.[51] The Magistrate Judge's construction inserts unnecessary ambiguity into the claim by now allowing an application program to specify or not specify transport mechanism details, which is directly at odds with the claim's "shielded from" language, the specification, and the prosecution history.[52]

### B. *"library of transport mechanisms"*[53]

The Magistrate Judge erred in not construing the term "library of transport mechanisms." The Magistrate Judge's Order reasons that "[n]ot only does Claim 1 disclose a 'library,' as opposed to a 'library API,' but the specification includes a disclaimer explicitly stating that the invention is not limited to the preferred embodiments." However, this is nothing more than

---

[49] *See* Defs.' Resp. at 9; *see also* Markman Hr. Tr. at 105:19-123:16.
[50] This term is located in claim 1 of the '949 patent.
[51] Specifically, "[t]he claims of a patent define the invention to which the patentee is entitled the right to exclude," *Phillips v. AWH Corp.,* 415 F.3d 1202, 1312 (Fed. Cir. 2005) (citations omitted), and as this Court noted, "[w]hile the claims must be read in light of the specification, the disclosures within the specification do not overcome the 'bedrock principle' that the claims, not the written description, define the invention." Order at 31 (citing *Phillips* 415 F.3d 1202).
[52] *See* Defs.' Resp. at 28-29; Markman Hr. Tr. at 133:1-139:24.
[53] This term is located in claim 1 of the '949 patent.

9

boilerplate language that should be afforded no weight.[54] Instead, the exchange manager program is the very "exchange manager API," which the specification discloses interacts with the exchange library API in order to implement the transport mechanisms, consistent with Defendants' proposed construction. Because the claim term is ambiguous as to whether the library of transport mechanisms is accessible by the exchange manager program and accessible through an API, the lack of construction fails to provide the necessary clarification to the jury.[55]

## VI. THE '342 PATENT

Defendants object to the construction of three claim terms from claims 1 and 6 of the '342 patent as set forth in the Magistrate Judge's Order.

### A. *"call initiation button"*[56]

Defendants respectfully request reconsideration of the decision to not construe the claim term "call initiation button" to provide necessary and needed clarification to the jury. The intrinsic record supports Defendants' construction that the "call initiation button" must be the "same button that always initiates a call to the last number called or the received digits."[57] Further, the prosecution history demonstrates the applicants amended the claim language to overcome a prior art reference where "the user may press a SEND button and then particular caller-related information is used for initiating the return call (including a last entered number)."[58] In order to overcome this reference, the applicant amended the claims to require the same call initiation button to both initiate a phone call to a number entered on the keypad, and

---

[54] *See ICHL, LLC v. NEC Corp. of Am.*, Case Nos. 5:08cv65, 175, and 177, 2010 U.S. Dist. LEXIS 38942, *51-52 (E.D. Tex., Apr. 20, 2010).
[55] Defs.' Resp. at 26-27; Markman Hr. Tr. at 150:15 – 152:12.
[56] This term is located in claims 1 and 6 of the '342 patent.
[57] *See* Defs.' Resp. at 23-24.
[58] *See* Defs.' Resp. at 24; *see also* Defs.'s Resp., Ex. 21 at 4.

10

where no number is entered, the phone call will be placed to the last called number.[59] Thus, the order' conclusion that "the claim language does not require that the call initiation button always be the same button . . ." is incorrect.

### B. *"[thereby] suspending non-phone functions"*[60]

Although Defendants agree with the Magistrate Judge's statement that "[t]he language of the claims indicate that non-phone functions are suspended 'in response to said user selecting said call initiation button," Defendants disagree that the language of the claim is unambiguous and respectfully submit that a construction stating that pressing the call initiation button suspends non-phone functions is needed to avoid jury confusion. In addition, Defendants respectfully disagree with the Magistrate Judge's decision to omit "all" from the construction. The order states that the term "all" is unsupported "especially because the call initiation button may suspend or cancel non-phone functions."[61] However, the order already distinguished the patent's use of the terms "suspended" versus ended or cancelled, and in doing so, removed applications that can be ended or cancelled from issue. Moreover, construing the term to be "all non-phone functions" is supported by the claim language and prosecution history. The applicant stated, "the present invention proposes that the computer device suspend <u>any</u> non-phone functions in response to a user selecting the call initiation button."[62]

In addition, the adoption of the term "temporarily" inserts unneeded ambiguity into the claim language. The term "temporarily" is of any undisclosed duration, with the exception of permanent, which is neither disclosed nor enabled in the specification. Moreover, the adoption of the term "stopping" is also not described or enabled in the specification and inserts even more

---

[59] *See* Defs.' Resp. at 24; *see also* Defs.'s Resp., Ex. 22 at 2.
[60] This term is located in claims 1 and 6 of the '342 patent.
[61] Order at 47.
[62] *See* Defs. Resp. at 22.

11

ambiguity into the claim. In contrast, Defendants' proposed construction "during the call" is supported by the specification which refers to the user "tapp[ing] on a done button" when the call ends.[63]

### C. *"a speak button replaces the mute button"*[64]

Defendants respectfully submit that the construction of "a speak button replaces the mute button" is incomplete and request reconsideration. The order accords no weight to statements made during prosecution, where the applicant distinguished prior art that used the words "mute" and "unmute" by amending the claims to add the limitation "replacing the mute button with a speak button in response to selecting of the mute button during the phone call."[65] The functionality of the "unmute' button of the Nokia reference does exactly what this Court now construes the term "speak button" to mean: "a button that activates the microphone on the device." Such construction contradicts applicant's statements and makes superfluous the claim language that already describes what the buttons do: "deactivate the telephone communication capability for received signals during a phone call . . . ."[66]

Finally, although the Magistrate Judge states that "Defendants' proposal inappropriately focuses on the literal button markings rather than the functionality of the buttons," the Magistrate Judge is incorrect. The claim describes that the "mute button" and "speak button" are included on the "selectable interface," i.e., literal buttons on the user interface. As discussed above, the claim already includes a description of the functionality of these buttons and any proposed construction to that effect would be redundant.[67]

---

[63] *See* Defs.' Resp. at 23-23; *see also* Markman Hr. Tr. at 171:23-176:4; '949 patent at 7:15-17.
[64] This term is located in claim 6 of the '342 patent.
[65] *See* Defs.' Resp. at 25.
[66] *See, Haemonetics Corp. v. Baxter Healthcare Corp.,* 607 F.3d 776, 781 (Fed. Cir. 2010) (all claim terms should be given effect that avoids construing the physical structure and characteristics of the claims needless.)
[67] *See* Defs.' Resp. at 24-25; *see also* Markman Hr. Tr. at 180:4 – 183:9.

## VII. THE '064 PATENT

Defendants object to the construction of four claim terms, and object in part to the construction of the order of the steps, in claim 17 of the '064 patent.

### A. *Order of the Steps*[68]

The Magistrate Judge correctly determined that step c) of claim 17 logically must precede step e), but denied any further order to the steps, incorrectly stating that "Defendants point to nothing in the specification that 'directly or implicitly requires such a narrow construction.'"[69] Defendants pointed out in supplemental briefing—rejected as untimely filed[70]—that during prosecution the patentee argues that step a) must precede step b) to overcome a rejection.[71] Defendants respectfully request that the Court consider this evidence of the proper construction.

### B. *"network link"*[72]

Defendants respectfully submit that the adoption of Plaintiff's construction of "network link" creates an inconsistency with the surrounding claim language and the specification. The claim describes each "network link" as having both a "protocol" and a "connection type." Likewise, the '064 specification explains that "network links utilize a variety of network protocols and require a variety of physical connections (i.e., wired and wireless) to establish communication with the numerous networks."[73] The Magistrate Judge acknowledges that the surrounding claim language reiterates the protocol and connection type requirements.[74] But by leaving the protocol requirement out and adopting Plaintiff's proposal, the resulting construction

---

[68] The steps are located in claim 17 of the '064 patent.
[69] Order at 52.
[70] Order at 24 n.14.
[71] *See* Defs.' Suppl. Br. at 4 n.2 (citing '064 Patent Prosecution History, September 8, 2008 Amendment and Response to Final Office Action at 12 (distinguishing prior art reference, Wild, by arguing the priority list is "pre-existing" on the device before step b) of the claim)).
[72] This term is located in claim 17 of the '064 patent.
[73] Defs.' Resp. at 18 (citing Ex. 13 at 8:50-53).
[74] Order at 53.

13

creates potential ambiguity as to whether both a specific protocol and connection type is required. In addition, the Applicant specifically disclaimed point-to-point links and link interfaces during prosecution, as discussed in Defendants' briefing.[75]

    **C.**    *"diverse types of connection"*[76]

The Order misinterprets Defendants' argument on this term and also reads out the term "diverse." Contrary to the Order, Defendants do not contend that the specification requires both a wired and wireless connection to exist at the same time.[77] Rather, Defendants contend that the "instructions" *must be configured to support* both wired and wireless connections, so that the user may select one or the other, not that both a wired and wireless connection must exist at the same time. The construction currently would read on "instructions" configured to support only one type of connection: e.g., a "wireless connection," thereby reading the "diverse" requirement for connection types out of the claim. In addition, the written description specifically defines this term as "wired and wireless."[78]

    **D.**    *"associating one or more alternative network link designations with one or more said network links based upon a priority order assigned by the user"*[79]

Defendants respectfully submit that the Magistrate Judge erred by not construing this claim term as requiring a "sequential list." Instead, the Magistrate Judge distinguished between "chain implementation" and "loop implementation," and concluded that "loop implementation" is not "sequential." But the specification makes clear that "loop implementation" is indeed sequential. The specification discusses implementations where the specified/priority order is

---

[75] *See* Defs.' Resp. at 18-19.
[76] This term is located in claim 17 of the '064 patent.
[77] *See* Order at 56.
[78] *See* the '064 patent at 8:50-52; *see also* Defs.' Resp. at 20.
[79] This term is located in claim 17 of the '064 patent.

used to establish a network link, *either* in a chain sequence or a loop sequence.[80] The loop implementation utilizes the specified/priority order (sequential list) but in a looping fashion such that if the connection fails, the personal digital assistant attempts that network link and the alternative network link again before moving down the list.[81] Because the claim language is ambiguous as to the meaning of "priority order," Defendants request reconsideration.[82]

  **E.**  *"attempting to initiate [a] . . . network link"*[83]

Defendants respectfully request reconsideration of the Magistrate Judge's decision to not construe the term "attempting to initiate [a] . . . network link." Defendants submit that this term is ambiguous and requires clarification for the jury.

## VIII. CONCLUSION

For these reasons, Defendants respectfully request that the Court overrule the Magistrate Judge's claim constructions of the above terms and adopt Defendants' proposed constructions.

Dated: August 20, 2012    Respectfully submitted,

            */s/ Yar R. Chaikovsky*
            Yar R. Chaikovsky
            McDERMOTT WILL & EMERY LLP
            275 Middlefield Road, Suite 100
            Menlo Park, California 94025-4004
            Tel: (650) 815-7400
            Fax: (650) 815-7401
            mfmartin@mwe.com
            ychaikovsky@mwe.com

---

[80] *See* '064 patent at 10:17-25.
[81] *Compare,* '064 patent at Fig. 9 (chain implementation) *with* '064 patent at Fig. 10 (loop implementation (both tables contain the same specified/priority order (sequential list))
[82] *See* Defs. Resp. at 20; *see also* Markman Hr. Tr. at 200:21-203:6.
[83] This term is located in claim 17 of the '064 patent.

David M. Beckwith
Brock F. Wilson
McDERMOTT WILL & EMERY LLP
4 Park Plaza, Suite 1700
Irvine, California 92614-2559
Tel: (949) 851-0633
Fax: (949) 851-9348
dbeckwith@mwe.com
bwilson@mwe.com

Eric W. Hagen
McDERMOTT WILL & EMERY LLP
2049 Century Park East, 38th Floor
Los Angeles, California 90067-3218
Tel: (310) 788-4165
Fax: (310) 277-4370
ehagen@mwe.com

J. Thad Heartfield
Texas State Bar No. 09346800
The Heartfield Law Firm
2195 Dowlen Road
Beaumont, Texas 77706
Tel: (409) 866-3318
Fax: (409) 866-5789
thad@jth-law.com

*Attorneys for Defendants HTC Corporation and HTC America, Inc.*


*/s/ John H. McDowell, Jr.*
John H. McDowell, Jr.
Texas State Bar No. 13570825
johnmcdowell@andrewskurth.com
Benjamin J. Setnick
Texas State Bar No. 24058820
bensetnick@andrewskurth.com
ANDREWS KURTH LLP
1717 Main Street, Suite 3700
Dallas, Texas 75201
Tel: (214) 659-4400
Fax: (214) 915-1434

James V. Mahon (pro hac vice)
jamesmahon@andrewskurth.com
L. Scott Bloebaum (pro hac vice)
scottbloebaum@andrewskurth.com
ANDREWS KURTH LLP
4819 Emperor Blvd.
Suite 400
Durham, NC 27703
Tel: (919) 313-4827
Fax: (202) 974-9553

*Attorneys for Defendants Sony Mobile Communications AB and Sony Mobile Communications (USA), Inc.*

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5 on this 20th day of August, 2012.  As of this date, all counsel of record have consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A).

                */s/ Yar Chaikovsky*
                Yar Chaikovsky

DM_US 37638251-3.080086.0018